UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUANJA EDWARD ANDERSON, | Case No.:  15cv993-BEN (BLM) |
| Plaintiff, | **REPORT AND RECOMMENDATION FOR ORDER:** |
| v. | |
| A. HERNANDEZ, et al., | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT [ECF No. 23],** |
| Defendants. | **AND** |
| | **(2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES [ECF No. 24]** |
| | **AND** |
| | **ORDER DENYING PLAINTIFF'S MOTION TO BE TRANSFERRED TO ANOTHER INSTITUTION [ECF No. 34]** |

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United

1

States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, and Defendants' motion for summary judgment be **DENIED**.

## I.   PROCEDURAL BACKGROUND

On May 1, 2015, Plaintiff Tuanja Edward Anderson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Associate Warden Hernandez, Captain Stout, Correctional Officers ("C/O") Davis, Bustos, Heddy, and Miller, and the California Department of Corrections and Rehabilitation ("CDCR").  ECF No. 1 ("Comp.").  Plaintiff alleges claims under the Americans with Disabilities Act ("ADA") and the Eighth Amendment.  Id. at 4-6.

On November 9, 2015, Defendants filed a "Motion to Dismiss the Complaint."  ECF No. 23-1 ("MTD").  On November 10, 2015, the Court set a briefing schedule ordering Plaintiff to file his opposition to Defendants' motion to dismiss on or before December 16, 2015, and Defendants to file their reply on or before January 4, 2016.  ECF No. 26.  In accordance with the Court's briefing schedule, Plaintiff timely filed his opposition [ECF No. 28 ("MTD Oppo.")], and Defendants timely replied [ECF No. 30 ("MTD Reply")].

On November 9, 2015, Defendants also filed a "Motion for Summary Judgment Re: Exhaustion of Administrative Remedies."  ECF No. 24-2 ("MSJ").  On November 10, 2015, the Court issued an "Order Providing Plaintiff Notice of Defendants' Motion for Summary Judgment Re Failure to Exhaust Administrative Remedies" in which the Court advised Plaintiff of the requirements for opposing Defendants' summary judgment motion.  ECF No. 25.  The Court ordered Plaintiff to file his opposition to Defendants' motion on or before December 16, 2015, and Defendants to file their reply to the opposition on or before January 4, 2016.  Id. at 3.  The

2

1  parties timely filed their respective opposition [ECF No. 29 ("MSJ Oppo.")] and reply [ECF No. 35

2  ("MSJ Reply")].  Additionally, on November 24, 2015, Plaintiff signed a sworn declaration, which

3  the Court accepted on discrepancy on December 9, 2015.  ECF Nos. 31 & 32.  The contents of

4  the declaration suggest that Plaintiff filed the document in support of his opposition to

5  Defendants' motion for summary judgment.  See ECF No. 32 ("Plaintiff's Decl.").

6  **II.    COMPLAINT ALLEGATIONS**

7      Plaintiff alleges in his Complaint that he requested that his "cell be cleaned by staff" at

8  the Richard J. Donovan Correctional Facility ("RJD") because he was legally blind and could not

9  clean the cell himself.  Comp. at 4.  Plaintiff claims that on August 27, 2013, Defendant Stout

10  reviewed Plaintiff's request, and stated that he "was not running a maid service" and that he

11  would find a cellmate for Plaintiff who "would help keep the cell cleaned."  Id.  Plaintiff asserts

12  that on August 28, 2013, Defendant Stout advised him that he would move "an ADA worker"

13  into Plaintiff's cell.  Id.  The same day, inmate Lee moved into Plaintiff's cell, offered Plaintiff

14  poisoned coffee, which made Plaintiff "drowsy and weak," and threatened to "rape" Plaintiff that

15  night.  Id. at 5.  Plaintiff claims that Lee was a member of the "blood" street gang and that Lee

16  knew that Plaintiff was imprisoned for murdering a "blood."  Id.

17      Plaintiff alleges that he informed Defendant Heddy that he was suicidal, and that Heddy

18  responded "Fuck you, go to bed" and walked away.  Id.  Plaintiff claims that he then grabbed a

19  razor but Lee told him to "wait because [Plaintiff] was going to slash [his] own throat," and that

20  Lee and other inmates started yelling "man down."  Id.  Plaintiff asserts that Defendants Bustos

21  and Davis came to his cell door but refused to remove him from the cell, and that Lee sexually

22  assaulted him that night.  Id.  Plaintiff maintains that he told the correctional officers that he

23

1  was suicidal because he hoped to be "moved so [that he] could make [his] complaint in private,"

2  that the "bloods put a hit on [him] in 2004," and that "there are letters in [his] C-file."[1]  Id.

3       Plaintiff also claims that from September 21, 2013 until January 15, 2014, Defendants

4  Heddy, Davis, Bustos, and Miller denied his requests for dental supplies, and that, as a result,

5  he lost four teeth and the enamel on another tooth.  Id. at 6.  Plaintiff contends that Defendants

6  retaliated against him after he reported the sexual assault and claimed that Defendants Davis,

7  Heddy, and Bustos could have prevented the assault by removing him from the cell.  Id.  Plaintiff

8  seeks $15,000,000 in damages, $850,000 in punitive damages, to be transferred to "Missouri

9  D.O.C.," and to have his damaged teeth "repair[ed] and/or replace[d]."  Id. at 8.

10 **III.   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

11      Plaintiff raises the following claims in his Complaint: "Reasonable Accommodation Under

12 the ADA," "Cruel and Unusual Punishment," and "Access to [D]ental Supplies."  ECF No. 1 at 4-

13 6.  Defendants move to dismiss all three claims pursuant to Federal Rule of Civil Procedure

14 ("FRCP") 12(b)(6) for failure to state a claim upon which relief can be granted.  MTD at 1, 3-9.

15 Defendants also move to dismiss all claims against Defendant Hernandez because Plaintiff fails

16 to allege the personal involvement of Defendant Hernadez.  Id. 7-9.  Plaintiff disputes these

17 arguments in his opposition.  See MTD Oppo.

18 ///

19 ///

20 _____

21     [1] "A C-file is the central or main file for an inmate serving time in a state prison.  Staff
22 and inmates with special work clearance have access to the C-files."  Dunaway v. Cal. Dep't of
   Corr. & Rehab., 2015 WL 3992554, at *1 (E.D. Cal. June 30, 2015).

23

4

### A.   <u>Legal Standard</u>

Pursuant to FRCP 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. <u>See</u> Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

When a plaintiff appears <i>pro se</i>, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal construction is "particularly important" in civil rights cases.  <u>Hendon v. Ramsey</u>, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992)); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "<i>Iqbal</i>

5

incorporated the *Twombly* pleading standard and *Twombly* did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ." This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil rights matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States. 42 U.S.C. § 1983. To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant." Harris v. Schriro, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted). A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation. Id.

6

**B.**   **Discussion**

**1. Defendants' Evidentiary Objections**

As an initial matter, the Court notes that Defendants argue that Plaintiff offers "new allegations and exhibits" in his opposition to their motion to dismiss and ask the Court to disregard "these new allegations" in deciding the instant motion.   MTD Reply at 2.   "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."   Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original); see also Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997).   "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."   Schneider, 151 F.3d at 1197 n.1.   This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).   Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)); Beattie v. Armenta, 2015 WL 10319088, at *3 (S.D. Cal. July 27, 2015) (same).   However, courts may consider new allegations in plaintiff's opposition to determine whether to grant leave to amend.   See Janoe v. Raske, 2009 WL 1615991, at *4 n.3 (S.D. Cal. June 8, 2009) (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137 (9th Cir. 2001)).   Further, "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."   Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).   The Court **SUSTAINS** Defendants' objection.   Accordingly, to the extent Plaintiff raises new allegations in his opposition to Defendants' motion to dismiss, the Court will not consider the new allegations and evidence in evaluating the sufficiency of the complaint but will consider them in determining whether to grant leave to amend.   See Beattie, 2015 WL

7

1   10319088, at *6 (confining its analysis to the allegations in the complaint where plaintiff's

2   opposition purported to raise new allegations).

3   **2. Claims Against Associate Warden Hernandez**

4   Defendants assert that Plaintiff fails to allege the requisite personal involvement of

5   Defendant Hernandez.  MTD at 7-9; MTD Reply at 3.  In support, Defendants state that Plaintiff

6   has not included Defendant Hernandez in the body of his Complaint, and that Plaintiff's

7   "generalized and conclusory" allegations against Hernandez in the "Defendants" section of the

8   Complaint are insufficient to survive a motion to dismiss.  MTD at 8; MTD Reply at 4.  Plaintiff

9   responds that Defendant Hernandez "authorized Mr. Stout's action[2] so there would be no 'maid

10  service,'" and that Hernandez is thus not immune from suit in this case.  MTD Oppo. at 4.

11  To state a claim for a constitutional violation under Section 1983, a plaintiff "must plead

12  facts sufficient to show that her claim has substantive plausibility."  Johnson v. City of Shelby,

13  Miss., 135 S.Ct. 346, 347 (2014) (citing Bell Atlantic Corp., 550 U.S. at 544; Ashcroft, 556 U.S.

14  at 662).  Government officials are not liable under § 1983 for their subordinates' unconstitutional

15  conduct based on respondeat superior or another theory of vicarious liability, and plaintiff is

16  required to plead that "each Government-official defendant, through the official's own individual

17  actions, has violated the Constitution."  See Iqbal, 556 U.S. at 676 (citing Monell v. Dep't of Soc.

18  Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a "municipal person" under 42

19  U.S.C. § 1983)).

20

21

22  [2] Plaintiff's Complaint alleges that Defendant Stout "was the official who denied
23  [Plaintiff's] ADA Reasonable Accommodation Request (First Level Reviewer) resulting in
    [Plaintiff's] sexual assault."  Comp. at 2.

A supervisor may be individually liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." Starr, 652 F.3d at 1205 (citation omitted).  Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-08 (citation omitted).  A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others."  Id. at 1208 (citation omitted).  Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted).

In this case, Plaintiff's Complaint names Associate Warden Hernandez in his individual and official capacities, and alleges that Hernandez "authorized the denial of [Plaintiff's] ADA reasonable accommodation request, resulting in [Plaintiff's] sexual assault."  Comp. at 2.  As such, Plaintiff appears to allege that Defendant Hernandez is liable because he "acquiesce[d] in the constitutional deprivation." See Starr, 652 F.3d at 1208.  Such liability may be established where the supervisor reviewed plaintiff's applicable inmate appeal and failed to take corrective

1   action, thereby allowing the violation to continue.  See Poulson v. Kirkegard, 2015 WL 5943207,

2   at *5 (D. Mont. Mar. 16, 2015).  "If a constitutional violation is complete, however, and a

3   supervisory grievance reviewer is simply making a determination on whether the prison should

4   provide a remedy for a past violation, the supervisory grievance reviewer has no part in causing

5   the constitutional violation."  Id.

6         In Porter v. Cash, 2012 WL 5308369, at *7 (C.D. Cal. Sept. 20, 2012), the court found

7   that plaintiff adequately alleged supervisory liability of former warden Cash based on her

8   acquiescence in the unconstitutional conduct of her subordinates.  In Cash, plaintiff's complaint

9   attached a Second Level Appeal Response signed by Cash addressing "Plaintiff's request that

10  the ICC [Institutional Classification Committee] rescind its request for an indeterminate SHU

11  [Security Housing Unit] term and consider Plaintiff for PHU [Protective Housing Unit] placement."

12  Id.; see also id. at *1, 8 (explaining the abbreviations).  The court concluded that the plaintiff

13  adequately "alleged Cash's knowledge of the ICC's decision, coupled with her inaction or failure

14  to terminate the ICC's decision."  Id.

15        Plaintiff's allegations against Defendant Hernandez are conclusory and insufficient.

16  Plaintiff's Complaint identifies Defendant Hernandez in the caption and list of defendants but

17  only generally alleges that Hernandez "authorized the denial of [Plaintiff's] ADA reasonable

18  accommodation request."  Comp. at 1-2.  Plaintiff does not mention Defendant Hernandez in

19  the body of his Complaint, and it is thus unclear whether Plaintiff is alleging claims against

20  Hernandez for the ADA violation, the Eighth Amendment violation, or both.  Moreover, the

21  Complaint does not clearly and specifically describe what actions Defendant Hernandez took or

22  failed to take that caused the alleged violation, especially since, as discussed in Section III.B.3,

23  the ADA accommodation request was granted.  As such, Plaintiff's Complaint fails to allege

1  sufficient personal involvement of Defendant Hernandez or a connection between Defendant

2  Hernandez's actions and Plaintiff's alleged constitutional violation, and does not state a claim

3  against Defendant Hernandez.  See Henry v. Sanchez, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996)

4  ("A supervisory official, such as a warden, may be liable under Section 1983 only if he was

5  personally involved in the constitutional deprivation, or if there was a sufficient causal connection

6  between the supervisor's wrongful conduct and the constitutional violation.").  Plaintiff also does

7  not allege any facts indicating that the alleged constitutional violation was not complete before

8  Defendant Hernandez acted or failed to act.  See Poulson, 2015 WL 5943207, at *5.

9       If Plaintiff wants to re-allege constitutional violations against Defendant Hernandez,

10 Plaintiff should bear in mind that defendants can only be liable for their own misconduct, and

11 that therefore he must plead facts alleging that Defendant Hernandez violated the Constitution

12 through his own individual actions.  See Iqbal, 556 U.S. at 676.  Further, Plaintiff must clearly

13 state the facts, not merely conclusions, supporting his allegations.  Id. at 678 (while detailed

14 factual allegations are not required, "[t]hreadbare recitals of the elements of the cause of action,

15 supported by mere conclusory statements, do not suffice.").  Finally, Plaintiff must clearly state

16 which claim or claims he is asserting against Defendant Hernandez. The Court therefore

17 **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITH LEAVE TO AMEND**

18 as to Defendant Hernandez.

19            **3.  ADA Claim**

20      Defendants assert that Plaintiff's ADA claim fails for several reasons.  See MTD at 3-4.

21 First, Defendants argue that the ADA does not permit recovery against individuals.  Id. at 3.

22 Second, Defendants claim that Plaintiff fails to state a cognizable claim for relief because he fails

23 to show that he was denied the benefits of the CDCR's services or discriminated against while

11

1    housed at RJD, and that any exclusion or denial of benefits Plaintiff allegedly suffered was

2    because of his disability.  Id. at 3-4.  Finally, Defendants maintain that Plaintiff may not recover

3    punitive damages in connection with his ADA claim because the ADA does not permit the award

4    of punitive damages in a private suit against a government or government agency.  Id. at 4.

5          In his opposition, Plaintiff claims that his "ADA claims are meritorious" because Medical

6    Technical Assistant Martinez gave him the incorrect address for the CDCR, and that on

7    September 10, 2015, the U.S. Marshals Service mailed the summons and Complaint to the

8    address.  MTD Oppo. at 1-2.  Plaintiff attaches exhibits to support his allegations.  Id. at 5-6.

9    Defendants reply by objecting to Plaintiff's offer of "new allegations and exhibits" and further

10   argue that even if Plaintiff properly served the CDCR, the Complaint would still fail to state a

11   claim.  MTD Reply at 2.

12         Plaintiff alleges in Count 1 of his Complaint that he was denied reasonable

13   accommodation under the ADA.   Comp. at 4.   Plaintiff does not clearly identify which

14   Defendant(s) he is alleging violated his ADA rights but his factual allegation names only

15   Defendant Stout.  Id.  Specifically, Plaintiff claims that on August 27, 2013, he had a CDCR 1824

16   review, during which he informed Defendant Stout that he could not clean his cell because he

17   was legally blind.  Id.  Plaintiff asserts that Defendant Stout responded that he "was not running

18   a maid service" and that he would find a cellmate who would keep Plaintiff's cell clean.  Id.

19                    **a.  Individual Capacity Claim Under the ADA**

20         "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his

21   or] her individual capacity to vindicate rights created by Title II of the ADA . . . ."  Vinson v.

22   Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002); see also Gary v. Hawthron, 2007 WL 2781098,

23   at *2, *4 (S.D. Cal. Sept. 19, 2007) (dismissing plaintiff's ADA claim pursuant to Rule 12(b)(6));

1    Cleveland v. T. Dennison, 2008 WL 4531971, at *1-3 (S.D. Cal. Oct. 9, 2008) (finding that

2    plaintiff was not entitled to bring an action under 42 U.S.C. § 1983 against defendant in his

3    individual capacity to vindicate rights created under Title II of the ADA); Nort v. Brown, 2015

4    WL 5155195, at *1, 6 (S.D. Cal. Sept. 1, 2015) (dismissing with prejudice plaintiff's individual

5    capacity claims under the ADA).

6         The proper defendant in a Title II claim is the public entity allegedly responsible for the

7    discrimination.  The term "public entity" includes state prisons.  See Pa. Dep't of Corr. v. Yeskey,

8    524 U.S. 206, 210 (1998) (holding state prisons are public entities under Title II).  A state official

9    acting in his official capacity may be a proper defendant pursuant to an ADA Title II claim.

10   Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003).

11        In the "Parties" section of his Complaint, Plaintiff states that he is suing Defendant Stout

12   only in his individual capacity.  ECF No. 1 at 2.  Plaintiff captioned the Complaint as arising under

13   42 U.S.C. § 1983 and asserts this federal question as the basis for this Court's jurisdiction.  Id.

14   at 1.  As such, even if Plaintiff can state a claim for an ADA violation, Plaintiff is barred from

15   pursuing such claim against either Defendant Stout or Defendant Hernandez in their individual

16   capacities.  See Vinson, 288 F.3d at 1156 (holding that the ADA does not provide for § 1983

17   actions against state officials in their individual capacities).  The Court therefore **RECOMMENDS**

18   that Defendants' motion to dismiss Plaintiff's ADA claim against Defendants Stout and Hernandez

19   in their individual capacities be **GRANTED**.  Further, because Plaintiff cannot amend his

20   Complaint to correct this defect, the Court **RECOMMENDS** that such dismissal be **WITH**

21   **PREJUDICE**.  See Nort, 2015 WL 5155195, at *1 (dismissing with prejudice individual capacity

22   claims based on the alleged violations of the ADA and Rehabilitation Act).

23

**b. Remaining Claims Under the ADA**

The ADA claim set forth in Count 1 of the Complaint identifies only Defendant Stout and, as discussed above, does not state a claim against Defendant Stout.  Defendants argue that Plaintiff should not be allowed to amend his ADA claim because he cannot state a claim against any Defendant, including the CDCR.  MTD at 4; MTD Reply at 2.  Defendants admit that Plaintiff has a qualifying disability but argue that Plaintiff cannot allege that he was denied benefits or discriminated against due to his disability.  MTD at 4.  Defendants explain that while Defendants denied Plaintiff's request to have Defendants clean his cell, Defendants agreed to (and did) assign Plaintiff a cellmate who would clean the cell so Plaintiff was not denied any benefits due to his disability.  Id.  While his argument is unclear, Plaintiff appears to argue that he should be allowed to amend his ADA claim to add the CDCR as a defendant.  MTD Oppo. at 1-2.

Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing 42 U.S.C. §12132).  In order to establish a violation of Title II of the ADA, a plaintiff must allege (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) that he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  Title II of the ADA applies to state prisoners.  Pa. Dep't of Corr., 524 U.S. at 208.

Punitive damages are not available in private suits brought under the ADA.  Barnes v. Gorman, 536 U.S. 181, 189 (2002); Mark H. v. Lemahieu, 513 F.3d 922, 930 (9th Cir. 2008).

14

1   "To recover monetary damages under Title II of the ADA . . . , a plaintiff must prove intentional

2   discrimination on the part of the defendant," and the standard for intentional discrimination

3   is deliberate indifference.   Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir.

4   2001).  Deliberate indifference under the ADA requires (1) knowledge that a harm to a federally

5   protected right is substantially likely; and (2) a failure to act upon that likelihood.  Id. at

6   1139.  The first prong requires a plaintiff to "identify 'specific reasonable' and

7   'necessary' accommodations that the state failed to provide."  Id. at 1140 (internal quotation

8   marks and citation omitted).  The second prong requires a showing that the entity deliberately

9   failed to fulfill its duty to act in response to a request for accommodation.  Id.  The entity's duty

10  is to undertake a fact-specific investigation to gather from the disabled individual and qualified

11  experts sufficient information to determine what constitutes a reasonable accommodation.  Id.

12  The second prong is not satisfied if the failure to fulfill this duty to accommodate results from

13  mere negligence.  Id.

14       Plaintiff alleges that he is a vision-impaired inmate and that he was housed at RJD at the

15  time of the alleged ADA violation.  Comp. at 4.  As such, Plaintiff is an individual with a disability

16  who is "otherwise qualified to participate in or receive the benefit of [the CDCR's] services,

17  programs, or activities," and thus satisfies the first two elements required to establish a violation

18  of Title II of the ADA.  See Thompson, 295 F.3d at 895.  However, the facts alleged in the

19  Complaint do not establish discrimination against Plaintiff because of his disability.  Rather, the

20  alleged facts indicate that Defendant Stout reviewed Plaintiff's request to have RJD staff clean

21  Plaintiff's cell and advised Plaintiff that he would find a cellmate "who would keep the cell

22  cleaned," and the very next day a new cellmate, whom Plaintiff describes as an "ADA worker,"

23  was moved into Plaintiff's cell.  See ECF No. 1 at 4.  Although Plaintiff's specific accommodation

1    request (that *staff* clean his cell) was denied [see id.], Plaintiff was provided with other

2    accommodations to ensure that his cell was cleaned.

3         Accordingly, Plaintiff has not alleged that he was "either excluded from participation in or

4    denied the benefits of the [CDCR's] services, programs or activities, and otherwise discriminated

5    against," and that such alleged exclusion, denial or discrimination occurred because of his

6    disability, and thus Plaintiff has not established the third and fourth elements of the ADA

7    violation. See Thompson, 295 F.3d at 895; Rideau v. Ochoa, 2010 WL 3733758, at *6 (S.D.

8    Cal. Sept. 16, 2010) (granting defendants' motion to dismiss plaintiff's ADA claims pursuant to

9    FRCP 12(b)(6) where the plaintiff did not allege facts to support the claim that he was denied a

10   single cell or medical treatment *because* of his physical disability).   The Court therefore

11   **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's ADA claim be **GRANTED.** See

12   Fleming v. Schwarzenegger, 2010 WL 3069349, at *1 (N.D. Cal. Aug. 4, 2010) (finding that

13   "[p]laintiff's housing needs have been met" and dismissing plaintiff's claim for injunctive relief

14   where the plaintiff, who suffered from paralysis and was wheelchair-bound, was transferred to

15   a cell that complied with the ADA and was assigned ADA workers to assist him); see also Allen

16   v. Carrington, 2009 WL 2877557, at *6 (D.S.C. Aug. 28, 2009) (finding that the prison provided

17   plaintiff with reasonable accommodations to participate in the day-to-day operations of the

18   prison, where the prison assigned another inmate to assist the plaintiff with getting to and from

19   the cafeteria and carrying his tray, and with "whatever other needs [the plaintiff] may have as

20   a result of his eyesight."); Williams v. Illinois Dep't of Corr., 1999 WL 1068669, at *8 (N.D. Ill.

21   Nov. 17, 1999) (denying defendants' motion for summary judgment and requiring Illinois

22   Department of Corrections to "[p]rovide [plaintiff] with navigational assistance when he is

23   moving around the prison," and noting that such "assistance may include the use of other

prisoners to assist [plaintiff]"); <u>see also</u> <u>Curry v. Tilton</u>, 2012 WL 967062, at *2 (N.D. Cal. Mar. 21, 2012) (noting that prison had an Inmate Assistance Program, which "allowed physically-limited inmates who had difficulty participating in everyday activities to receive aid from *designated inmate workers*," including "assistance in preparation of laundry bags, *maintenance of cell cleanliness*, scribing assistance, escort to and from the dining room with assistance to carry meal trays, and escort to educational and work programs.") (emphasis added). Because it is not clear that Plaintiff cannot allege facts that will state a claim against the CDCR[3] for an ADA violation, the Court **RECOMMENDS** that the claim be dismissed **WITH LEAVE TO AMEND**.

### 4. Eighth Amendment Claims

Defendants move to dismiss on the ground that Plaintiff's Complaint fails to state a claim under the Eighth Amendment. MTD at 4-7. Specifically, Defendants assert that Plaintiff fails to allege facts establishing a deliberate indifference to either his safety or his medical care. <u>Id.</u>

### a. Deliberate Indifference to Safety

Plaintiff alleges that Defendants Heddy, Davis and Bustos were deliberately indifferent to Plaintiff's safety when they failed to remove Plaintiff from his cell after he stated that he was suicidal, resulting in Plaintiff being raped by his cellmate. <u>See</u> Comp. at 5. Defendants argue that Plaintiff has not "plead facts to establish that [he] complained about the actions of his cellmate to any of the Defendants or that any of the Defendants had knowledge that his cellmate

---

[3]Plaintiff has not served the summons and Complaint on Defendant CDCR. ECF No. 15. In his opposition, Plaintiff states that a prison employee at the Salinas Valley Psychiatric Program provided him with an incorrect address for Defendant CDCR. MTD Oppo. at 1-2. If Plaintiff files a First Amendment Complaint naming Defendant CDCR, Plaintiff must obtain the correct address and serve Defendant CDCR within ninety days. Fed. R. Civ. P. 4(m).

1    was a danger to him." MTD at 6; MTD Reply at 3. Defendants also claim that Plaintiff's allegation

2    that he told them that he was suicidal, without more, is insufficient to establish deliberate

3    indifference to Plaintiff's safety. See id. Plaintiff responds that Defendants are obligated to

4    address any suicidal threats by prisoners. MTD Oppo. at 2.

5        A prisoner may state a section 1983 claim under the Eighth Amendment against prison

6    officials where the officials acted with "deliberate indifference" to the threat of serious harm or

7    injury by another prisoner. Leach v. Drew, 385 F. App'x 699, 701 (9th Cir. 2010) (citing Berg v.

8    Kincheloe, 794 F.2d 457, 459, 460-61 (9th Cir. 1986); Robins v. Prunty, 249 F.3d 862, 866 (9th

9    Cir. 2001). To assert an Eighth Amendment claim based on failure to prevent harm, a prisoner

10   must satisfy two requirements: one objective and one subjective. See Farmer v. Brennan, 511

11   U.S. 825, 834 (1994). Under the objective requirement, the inmate must show that he was

12   incarcerated under conditions posing a substantial risk of serious harm. Id. Under the subjective

13   requirement, the prisoner must allege facts which demonstrate that "the official knows of and

14   disregards an excessive risk to inmate health or safety; the official must both be aware of the

15   facts from which the inference could be drawn that a substantial risk of serious harm exists, and

16   he must also draw the inference." Id. at 837. To prove knowledge of the risk, the prisoner may

17   rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to

18   establish knowledge. Id. at 842.

19       **1) Objective Prong**

20       Plaintiff alleges that on August 28, 2013, inmate Lee was transferred to Plaintiff's cell and

21   told Plaintiff that he would rape Plaintiff that night. Comp. at 5. Plaintiff claims that Lee was a

22   member of the "blood" gang and that Lee knew that Plaintiff was imprisoned for murdering a

23   "blood." Id. Plaintiff further alleges that Lee drugged and raped him in his cell. Id. at 5. These

facts satisfy the objective prong of an Eighth Amendment claim as they allege that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.  See Becker v. Cowan, 2008 WL 802933, at *11 (S.D. Cal. Mar. 21, 2008) ("[a] substantial risk of being physically attacked, beaten, or raped is sufficiently serious to satisfy the objective element of an Eighth Amendment claim") (citing Farmer, 511 U.S. at 832)); Wright v. Grannis, 2010 WL 6086269, at *4 (S.D. Cal. Nov. 9, 2010) (finding that plaintiff has pled facts to satisfy the objective prong of an Eighth Amendment claim where the plaintiff's complaint alleged that he was drugged and raped in his cell by his cellmate), *adopted*, 2011 WL 890817 (S.D. Cal. Mar. 14, 2011).

### 2) Subjective Prong

Plaintiff states that after Lee threatened to rape him, he informed Defendant Heddy that he was suicidal, and that Heddy responded "Fuck you, go to bed" and walked away.  Comp. at 5.  Plaintiff alleges that he then grabbed a razor from his locker.  Id.  Plaintiff does not allege that he intended to harm himself or others but rather, Plaintiff merely claims that Lee told him to "wait because [Plaintiff] was going to slash [his] own throat."  Id.  Plaintiff states that Lee and other inmates started yelling "man down."  Id.  Plaintiff asserts that Defendants Bustos and Davis came to the door of his cell but refused to remove him.  Id.  Plaintiff does not state what, if anything, he told Defendants Bustos and Davis about his mental state, nor does Plaintiff describe how he was behaving or what Lee and the other inmates told Defendants Bustos and Davis about the situation.  Id.  While Plaintiff states that he told Defendants that he was suicidal because he hoped to be "moved so [that he] could make [his] complaint in private," Plaintiff does not indicate what, if anything, Plaintiff did to convey that hope or his fear of harm to the named Defendants.  Id.  Finally, Plaintiff states that the "bloods put a hit on [him] in 2004. There are letters in my C-file."  Id.  Plaintiff does not provide any details regarding the alleged

hit, nor does he describe what information is contained in the letters or how that information impacted the alleged risk of harm facing Plaintiff.  See Comp.  Plaintiff also does not allege that any of the Defendants had access to his C-file or that they knew about the 2004 hit and/or the contents of the letters.  See id.

Plaintiff's Complaint fails to allege facts establishing the subjective prong of his Eighth Amendment claim.  Plaintiff does not allege that he told Defendants that his new cellmate posed a significant danger to him.  Plaintiff also does not allege any facts indicating that Defendants knew or inferred that Plaintiff's new cellmate created a substantial risk of harm to Plaintiff.  While Plaintiff alleges that he told Defendant Heddy that he was suicidal, Plaintiff does not state what if anything he told Defendants Bustos and Davis when they responded to the yells of "man down."  Plaintiff also does not describe either interaction or otherwise allege facts indicating that Plaintiff was suicidal and that Defendants should have known or inferred that he presented an excessive risk to his own safety.  In fact, Plaintiff only alleges that he said he was suicidal and grabbed a razor in hopes that Defendants would remove him from his cell.  These allegations are insufficient to state a claim that Defendants knew of or disregarded an excessive risk to Plaintiff's safety.  In his opposition and in his prison grievances, Plaintiff set forth additional facts, which cannot be considered in evaluating the sufficiency of the Complaint but do indicate that the dismissal should be with leave to amend.  See Sosa Decl., Exh. B at 19; see also id., Exh. A at 9; MSJ Oppo. at 6.  Similarly, as discussed above, Plaintiff's Complaint contains vague conclusory statements which could be used to state a claim if additional facts are provided.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim for deliberate indifference to his safety against Defendants Heddy, Davis and Bustos be **GRANTED WITH LEAVE TO AMEND**.

### b.   Deliberate Indifference to Plaintiff's Medical Needs

Defendants maintain in their motion to dismiss that Plaintiff's allegations are insufficient to establish the existence of a serious medical need and the subjective culpability on the part of each Defendant.   MTD at 6-7; MTD Reply at 3.   Plaintiff responds that he is allowed one toothpowder and one toothbrush per week, and that Defendants Heddy, Davis, Bustos, and Miller did not distribute those items to him, stating that he "[was] not on the list," and that despite his assertion that he "need[ed] . . . dental supplies," Defendants repeatedly refused to provide the requested supplies.   MTD Oppo. at 2.   Plaintiff states that he did not have any available funds to purchase the requested dental supplies and asserts that Defendants acted in retaliation after he reported his sexual assault to Lieutenant Rink.   Id.

As noted above, courts generally may not consider materials outside the pleadings when resolving a motion to dismiss for failure to state a claim.   See Schneider, 151 F.3d at 1197 n.1; Jacobellis, 120 F.3d at 172.   Accordingly, to the extent Plaintiff asserts new facts in his opposition, the Court will not consider those facts and will limit its analysis to the allegations in the Complaint.   Plaintiff alleges in his Complaint that from September 21, 2013 until January 15, 2014, Defendants Heddy, Bustos, Davis, and Miller denied his requests for "dental supplies," and that, as a result, he lost four teeth and enamel on another tooth.   Comp. at 6.   Plaintiff also claims that Defendants acted in retaliation after he complained that Defendants Heddy, Bustos, and Davis "could have prevented the assault by taking [him] out of the cell when [he] said that [he] was suicidal."   Id.

A prison official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment.   See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).   A prisoner must satisfy an objective and a subjective

requirement to assert an Eighth Amendment violation. Id. The objective requirement is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id. (internal quotation marks and citation omitted); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc). The subjective component requires the prisoner to allege facts showing a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." Farmer, 511 U.S. at 836. The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Tracey v. Sacramento Cnty. Sheriff, 2008 WL 154607, at *2 (E.D. Cal. Jan. 15, 2008) (quoting Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988)).

### 1) Objective Prong

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Nawabi v. Wyatt, 2009 WL 3514849, *7 (C.D. Cal. Oct. 26, 2009) (citing Estelle, 429 U.S. 97 at 104). In considering the seriousness of an alleged medical need, courts should consider whether (1) a reasonable doctor would think that the condition is worthy of comment or treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition is chronic and accompanied by substantial pain. Id. (citing Doty v. Cnty. of Lassen, 37 F.3d 540. 546 n.3) (9th Cir. 1994)).

"Dental care is one of the most important medical needs of inmates."  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted).  The Eighth Amendment requires that prisoners be provided with a system of ready access to adequate dental care.  Id.  The Seventh Circuit has stated the following:

> a number of other courts have also held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need.  See Fields v. Gander, 734 F.2d 1313, 1314–15 (8th Cir. 1984); see also Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (recession or bleeding of the gums); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (deterioration of teeth due to lack of treatment); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (an interference with the ability to eat).  For example, in Penrod v. Zavaras, the United States Court of Appeals for the Tenth Circuit held that, for summary judgment purposes, the deprivation of toothpaste resulting in bleeding gums and tooth decay which had to be attended to by a dentist could constitute serious harm under the Eighth Amendment.  Penrod, 94 F.3d at 1406.

Bd. v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005)

Here, Plaintiff alleges that for almost four months starting on September 21, 2013, Defendants Heddy, Bustos, Davis, and Miller denied Plaintiff "dental supplies," and that he lost four teeth and enamel on another tooth.  Comp. at 6.  Reading Plaintiff's Complaint liberally and in favor of Plaintiff [see Erickson, 551 U.S. at 94; Thompson, 295 F.3d at 895], Plaintiff satisfies the objective prong because the facts set forth a plausible allegation of serious harm or injury.

## 2) Subjective Prong

The Court finds that Plaintiff fails to satisfy the subjective portion of the deliberate indifference test as he has not alleged that Defendants Heddy, Davis, Bustos, and Miller were aware of and disregarded an excessive risk to Plaintiff's health.  See Farmer, 511 U.S. at 837.  Initially, Plaintiff fails define the phrase "dental supplies."  The Complaint asserts that Defendants refused to provide Plaintiff with dental supplies but Plaintiff does not describe the specific items that were not provided.  Dental supplies is a broad term which could encompass many products

from a toothpick to toothpaste and toothbrush to floss to an electronic Waterpik or other items. The precise item that was denied may affect the validity of Plaintiff's claim.  See Pigues v. Solano Cnty. Jail, 2015 WL 2358647, at *3 (E.D. Cal. May 15, 2015) (noting that "a denial of dental floss to pretrial detainees did not present a constitutional question") (citing, *inter alia*, Green v. Denning, 465 Fed. Appx. 804, 807 n.2 (10th Cir. 2012) ("a claim based on the denial of dental floss was one of the examples of frivolous prisoner suits cited in the legislative history of the Prisoner Litigation Reform Act."); Mitchell v. Cate, 2015 WL 5255339, at *5 (E.D. Cal. Sept. 9, 2015) (noting that "[w]hile the Eighth Amendment guarantees sanitation . . . including personal hygiene supplies such as . . . toothpaste . . . , temporarily substandard conditions of confinement do not rise to the level of constitutional violations . . . .") (citing Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981); see also Lopez v. Cate, 2013 WL 239097, at *8 (E.D. Cal. Jan. 22, 2013) (finding that "the deprivation of . . . toothbrush, and toothpowder for approximately seven days does not rise to level of Eighth Amendment violation.").

Secondly, the Complaint merely states that the named defendants "continued to refuse [Plaintiff] dental supplies." Comp. at 6.  This statement is vague and conclusory and could mean that someone else originally denied the dental supplies or that someone else provided him with some dental supplies while the named Defendants refused to do so.  Similarly, the Complaint states that Plaintiff was denied dental supplies from September 21, 2013 thourgh January 15, 2014 but it does not provide any information regarding the time frame that each of these defendants allegedly caused the denial.  The Complaint also does not assert that Plaintiff requested specific supplies and/or was entitled to the supplies nor does it allege that these Defendants knew that Plaintiff had requested and/or not received the dental supplies.  Finally,

24

the Complaint does not provide any details regarding the specific actions that each defendant took which caused the alleged constitutional deprivation. See Smedley v. Reid, 2010 WL 391831, at *11 (S.D. Cal. Jan. 27, 2010) ("to survive Rule 12(b)(6) motion, complaint must directly connect defendants' actions with alleged harm") (citation omitted).  As a result, Plaintiff's allegations are too conclusory to state a constitutional claim for deliberate indifference to his medical needs against Defendants Heddy, Davis, Bustos, and Miller.  See Easter, 694 F. Supp. 2d at 1183 ("[v]ague and conclusory allegations" are not sufficient to withstand a motion to dismiss) (quoting Ivey, 673 F.2d at 268).  However, Plaintiff's opposition indicates that he may be able to allege additional facts.  See MTD Oppo. at 3.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendants Heddy, Davis, Bustos, and Miller be **GRANTED WITH LEAVE TO AMEND.**

**IV.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as to all claims and all Defendants prior to filing the instant action. MSJ at 3-10.

### A.     Exhaustion Under The Prison Litigation Reform Act

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") of 1995 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The United States

25

1  Supreme Court has confirmed that exhaustion is a mandatory prerequisite to filing suit in federal

2  court.  Id.  Failure to exhaust may not be waived.  See Woodford v. Ngo, 548 U.S. 81, 85 (2006)

3  ("[e]xhaustion is no longer left to the discretion of the district court").  The United States

4  Supreme Court has stated that "[t]here is no question that exhaustion is mandatory under the

5  PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199,

6  211 (2007).

7         To prevail on a motion for summary judgment, the defendant must prove that the plaintiff

8  failed to properly exhaust available administrative remedies.  Albino v. Baca, 747 F.3d 1162,

9  1172 (9th Cir. 2014); see also Jones, 549 U.S. at 216 (inmates are not required to specially

10  plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an

11  affirmative defense under the PLRA).  The defendant cannot demonstrate an absence of

12  exhaustion unless some relief remains available.  Brown v. Valoff, 422 F.3d 926, 936-37 (9th

13  Cir. 2005).  Therefore, the defendant must produce evidence that the plaintiff did not properly

14  exhaust a remedy that is available "as a practical matter" in that it must be "capable of use" or

15  "at hand."  Albino, 747 F.3d at 1171.

16         Once the defendant meets that burden, the plaintiff must "come forward with evidence

17  showing that there is something in his particular case that made the existing and generally

18  available administrative remedies effectively unavailable to him."  Id. at 1172.  The Ninth Circuit

19  has consistently held that administrative remedies were unavailable where the inmate was

20  thwarted by affirmative misconduct or obstruction by prison officials.  See Sapp v. Kimbrell, 623

21  F.3d 813, 823 (9th Cir. 2010) (screening out an inmate's administrative grievance for improper

22  reasons rendered administrative remedies unavailable); see also Nunez v. Duncan, 591 F.3d

23  1217, 1226 (9th Cir. 2010) (a prison warden's mistake in misdirecting the inmate rendered

26

administrative remedies unavailable).  However, an inmate who did not make any attempt to properly utilize the prison grievance system cannot sidestep the exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the prison system.  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); see also Woodford, 548 U.S. at 100 ("if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court.").

The Supreme Court in Woodford held that an inmate cannot satisfy the PLRA exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,'" defined by the specific prison grievance process in question.  Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 548 U.S. at 90-91.  This requirement serves PLRA's purpose because it "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."  Id. at 94.  Therefore, an inmate incarcerated in CDCR must comply with all the regulations and procedures of California's prison administrative appeals system to properly exhaust his claim.  See Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (citation omitted) ("[t]he California prison system's requirements 'define the boundaries of proper exhaustion'" for inmates bringing suit in California).

1

### B.   <u>California Regulations</u>

2

To properly exhaust available remedies for an administrative decision or perceived

3

mistreatment in California, an inmate must proceed through three formal levels of review.  <u>See</u>

4

Cal. Code Regs. tit. 15, §§ 3084.1–3084.9.  The three levels include: "(1) a first level appeal, to

5

be conducted by the division head or his or her designee"[4]; "(2) a second level appeal, to be

6

conducted by the hiring authority or his or her designee; and (3) a third level appeal, to be

7

conducted by the Office of Appeals in Sacramento, California (formerly the Inmate Appeals

8

Branch)."  <u>Jones v. Paramo</u>, 2013 WL 4517829, at *6 (S.D. Cal. Aug. 19, 2013); Cal. Code Regs.

9

tit. 15, §§ 3084.1, 3084.7.  "The third level review constitutes the decision of the Secretary of

10

the California Department of Corrections and Rehabilitation on an appeal" and "exhausts

11

administrative remedies."  <u>Id.</u> § 3084.7(d)(3).

12

An inmate must submit his or her appeal "within 30 calendar days of: (1) The occurrence

13

of the event or decision being appealed, or; (2) Upon first having knowledge of the action or

14

decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an

15

appeal filed."  <u>Id.</u> § 3084.8(b).  An appeal may be cancelled if it is untimely.  <u>Id.</u> § 3084.6(c)(4).

16

Once cancelled, the appeal shall not be accepted unless a determination is made that the

17

cancellation was made in error or new information is received making the appeal eligible for

18

19

20

21

22

23

---

[4] "All appeals shall be initially submitted and screened at the first level unless the first level is exempted."  <u>Id.</u> § 3084.7(a).  An appeals coordinator "may bypass the first level of appeal of: (1) A policy, procedure or regulation implemented by the department. (2) A policy or procedure implemented by the institution head. (3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent. (4) Serious disciplinary infractions."  <u>Id.</u> § 3084.7(a)(1-4).

1   further review. Id. §§ 3084.6(a)(3), 3084.6(e).   A cancellation does not exhaust an appeal,

2   though a cancellation at the Third Level may itself be appealed.  Id. § 3084.6(e).

3        The inmate may initiate litigation in federal court "only after the administrative process

4   ends and leaves his grievances unredressed."  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th

5   Cir. 2006).  "Administrative remedies shall not be considered exhausted relative to any new

6   issue, information, or person later named by the appellant that was not included in the originally

7   submitted CDCR Form 602 . . . , and addressed through all required levels of administrative

8   review up to and including the third level."  Cal. Code Regs. tit. 15, § 3084.1(b).

9       **C.**   **Summary Judgment Standard**

10        The proper vehicle for challenging a complaint based on failure to exhaust administrative

11   remedies is a motion for summary judgment under FRCP 56.   Albino, 747 F.3d at 1168

12   (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) which held that the proper

13   procedural device for defendants to raise an exhaustion defense was an unenumerated FRCP

14   12(b)(6) motion to dismiss).   "If under the Rule 56 summary judgment standard, the court

15   concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is

16   dismissal without prejudice."   Wells v. Kyte, 2014 WL 3058361, at *2 (E.D. Cal. July 3, 2014)

17   (citing Wyatt, 315 F.3d at 1120, *overruled on other grounds by* Albino, 747 F.3d 1162).

18        Summary judgment is appropriate if there is no genuine issue as to any material fact,

19   and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

20   moving party has the initial burden of demonstrating that summary judgment is proper.  Celotex

21   Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to

22   provide admissible evidence beyond the pleadings to show that summary judgment is not

23   appropriate.  Id. at 322-24.  The opposing party "may not rest upon mere allegation or denials

1    of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for

2    trial."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citation omitted).   In cases

3    where the defendant is moving for summary judgment for plaintiff's failure to exhaust

4    administrative remedies, the Ninth Circuit has held that

5    the defendant's burden is to prove that there was an available administrative
     remedy, and that the prisoner did not exhaust that available remedy.   See id.
6    ("[T]he respondent . . . must show that domestic remedies exist that the claimant
     did not use.").   Once the defendant has carried that burden, the prisoner has the
7    burden of production.   That is, the burden shifts to the prisoner to come forward
     with evidence showing that there is something in his particular case that made the
8    existing and generally available administrative remedies effectively unavailable to
     him.   See id.   ("[T]he burden shifts to the plaintiff to rebut by showing that the
9    local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or
     obviously futile.").   However, as required by Jones, the ultimate burden of proof
10   remains with the defendant.

11   Albino, 747 F.3d at 1172.

12        A court may not weigh evidence or make credibility determinations on a motion for

13   summary judgment; rather, the inferences to be drawn from the underlying facts must be

14   viewed in the light most favorable to the nonmoving party.   Anderson, 477 U.S. at 255.

15   Furthermore, in order to avoid summary judgment, the opposing party cannot rest solely on

16   conclusory allegations of fact.   Berg, 794 F.2d at 459.   Instead, the nonmovant must designate

17   which specific facts show that there is a genuine issue for trial.   Id.; Anderson, 477 U.S. at 256.

18        **D**.   **Defendants' Evidence**

19        Defendants submitted declarations from V. Sosa, the Appeals Coordinator at RJD, and

20   M. Voong, the Chief of the Office of Appeals, to establish that Plaintiff had access to an

21   administrative process and failed to exhaust the available administrative remedies.   See ECF No.

22   24-3, Declaration of V. Sosa ("Sosa Decl."); ECF No. 24-4, Declaration of M. Voong ("Voong

23   Decl.").   V. Sosa describes the administrative grievance process that was available to Plaintiff at

30

RJD,  including that "[a]ll appeals received by the appeals office are assigned a log number for tracking purposes," and entered into the computer system.  Sosa Decl. at 1-3.  V. Sosa states that he searched the office records pursuant to the request from the Office of the Attorney General and found the following four relevant grievances submitted by Petitioner during the designated time period[5]:

(1) *Appeal Log No. RJD-B-13-02337*.  On July 30, 2013, the appeals office received a Reasonable Modification or Accommodation Request from Plaintiff dated July 27, 2013, stating that he is visually impaired and requesting a magnifing device and assistance in cleaning his cell. Sosa Decl. at 4, 34 (Exh. D).  The request was partially granted at the first level of review in that Plaintiff was provided with a magnifiying device and prison staff was instructed to "expedite a bed move" to provide Plaintiff with an appropriate cellmate who could assist with cleaning. Id. at 4, 33.  Plaintiff did not appeal this decision.  Id. at 4;

(2) *Appeal Log No. RJD-X-13-02788*.  On August 15, 2013, the appeals office received a health care appeal from Plaintiff dated May 13, 2013 in which Plaintiff identified himself as legally blind and asked to have a specific inmate help Plaintiff with his reading and writing.  Id. at 3, 28-30 (Exh. C). On September 10, 2013, this request was cancelled as moot "due to [Plaintiff's transfer to SATF."  Id. at 4, 23;

(3) *Appeal Log No. RJD-C-14-02285*.  On June 14, 2014, the appeals office received a CDCR 602 grievance from Plaintiff dated June 9, 2014, alleging that Plaintiff was poisoned and sexually assaulted by his "ADA worker" cellmate Lee on August 28, 2013.  Id. at 3, 7-9 (Exh. A).

---

[5]V. Sosa states that he searched the prison records for relevant grievances filed between August 1, 2013 and January 15, 2014, but three of the identified responsive grievances are outside that time frame.  Sosa Decl. at 3-4, 6-35.

31

1   Plaintiff alleges that he tried to get help from C/Os Davis, Bustos, and Heddy but they went

2   home without helping him.  Plaintiff states that he told Lieutenant Rink about the attack on

3   August 29, 2013, that Lt. Rink told C/O Davis, and that C/O Davis threatened to kill Plaintiff if

4   anyone on his crew got in trouble.  Id. at 9.  Plaintiff further alleges that from September 21,

5   2013 through January 15, 2014, his "attacker harassed, teased and threatened [him]."  Id.

6   Finally, Plaintiff alleges that a large number of RJD staff, including Defendants Hernandez,

7   Bustos, Davis, Heddy and Miller, "denied [Plaintiff] showers, meds, shaves, writing material, and

8   state issued envelopes . . . and repeatedly threw away [his] blind canes and magnifiers" and

9   stole his money and "gave him tiny portions of food." Id.  This grievance was cancelled because

10   the "[t]he time limits for submitting the appeal are exceeded even though [Plaintiff] had the

11   opportunity to submit within the prescribed time constraints." Id. at 3, 6; and

12       (4) *Appeal Log No. RJD-X-14-03013.*  On August 19, 2014, the appeals office received a

13   CDCR 602 grievance from Plaintiff dated August 2, 2014 re-alleging the details regarding his

14   sexual assault on August 23, 2013, the claims that COs Bustos and Davis refused to help Plaintiff

15   prior to the assault, and that all of the COs in "B6" retaliated against Plaintiff for telling Lt. Rink

16   about the assault and officer misconduct.  Id. at 17-19 (Exh. B).  This grievance was cancelled

17   as untimely and for duplicating Appeal No. RJD-C-14-02285. Id. at 3, 15-16.

18       M. Voong states that the Office of Appeals "did not receive or accept any appeals from

19   Plaintiff, between, August 1, 2013 and January 15, 2014" pertaining to the instant allegations.

20   Voong Decl. at 4.  M. Voong explains that the Office of Appeals accepted a grievance from

21   Plaintiff on October 14, 2013 (RJD-13-02277), which was exhausted at the Third Level, involved

22   a challenge to a Rules Violation Report, and was irrelevant to the instant claims.  Id.  Although

23   no other appeals were submitted during the relevant time period, M. Voong identified one other

1    grievance (RJD-13-01868) which was received on June 17, 2013 and screened out on June 27,

2    2013 "because the appeal had previously been cancelled."   Id.

3        **E.    Plaintiff's Evidence**

4        Plaintiff filed a verified complaint (ECF No. 1), an unverified opposition (MSJ Oppo.),

5    exhibits (id. at 3-8), and a sworn declaration (Plaintiff Decl.) arguing that he exhausted his

6    claims, that he submitted a timely grievance which was not processed, and/or that his mental

7    health status and treatment prevented him from exhausting his claims.

8        Plaintiff states in his sworn declaration that he was sexually assaulted by his cellmate Lee

9    on August 28, 2013 and that he reported the assault to Lieutenant Rink and the CDCR

10   Investigative Services Unit on August 29, 2013, claiming that Defendants Heddy, Davis and

11   Bustos could have prevented the assault had they addressed his suicide threat.   Plaintiff Decl.

12   at 1.   Plaintiff explains that he was sent to an outside hospital for a rape exam, that he was

13   placed in a suicide cell upon his return, and that he was transferred to the "'New Corcoran' State

14   prison for crisis bed housing" from September 1-20, 2013.   Id. at 1-2.   Plaintiff states that he

15   "was not allowed writing supplies" until September 24, 2013.   Id. at 2.   Plaintiff states that on

16   September 24, 2013, after his return to RJD, he "wrote an appeal," gave it to C/O Crawford "to

17   turn in to the appeals box," and that C/O Crawford walked away with the envelope.   Id.   In his

18   verified complaint, Plaintiff states that "[o]n 9-24-13 I gave an inmate appeal to C/O K. Crawford

19   and asked him to put it in the appeals box.  I never heard anything again.  On 6-9-14, I submitted

20   another appeal, and I advised the appeals coordinator that I submitted a previous appeal in a

21   timely manner[.]"  Comp. at 7.

22       Plaintiff states that beginning on September 28, 2013, he asked several prison officials,

23   including Defendants Heddy, Bustos, Davis, Miller, and Hernandez, about his missing personal

33

1   property (vision impaired vest, blind cane, and glasses) and was told the property was lost.

2   Plaintiff Decl. at 2.  Plaintiff states that starting on September 20, 2013, he was denied "showers,

3   yard, shaves, medication" and "toothpaste, toothbrushes, indigent envelopes, and pen fillers."

4   Id.  Plaintiff asserts that these denials "only happened when defendants Miller, Heddy, Davis,

5   and Bustos were on duty."  Id.

6   Plaintiff maintains that he "was so stressed out," he "went back to crisis bed" in the

7   California Healthcare Facility ("CHCF") Stockton, on January 15, 2014.[6]  Id.  On February 6,

8   2014, Plaintiff was transferred to a Psychiatric Program at the Salinas Valley State Prison.  Id.

9   at 2-3.  Plaintiff concludes that the cancellation of Appeal No. RJD-C-14-02285 was improper

10  "because for 9 ½ months, [he] was mentally incapable of filing the appeal.  [He] was in the

11  SVPP-DSH program receiving therapy and treatment for being sexually assaulted, teased, bullied

12  and tortured."  Id. at 3.

13  **F.   <u>Analysis</u>**

14  An inmate must submit his grievance within thirty calendar days of the occurrence of the

15  event being appealed.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.8(b); <u>see also</u> Sosa Decl. at 2; Voong

16  Decl. at 3.  Plaintiff alleges that the ADA violation occurred on August 27, 2013 [<u>see</u> Comp. at

17  4] and the relevant grievances were received by the prison on July 30, 2013 and August 15

18  2013.  Sosa Decl. at  4; Exhs. C & D.  The July 30th grievance was granted in part and not

19  _____

20  [6] The Court notes that Plaintiff's declaration appears to contain an error with respect to
    the year when Plaintiff "went back to crisis bed" in CHCF Stockton.  <u>See</u> Plaintiff Decl. at 2.  Even
21  though the declaration references 201<u>3</u>, the context of the declaration, as well as Plaintiff's
    Appeals Log Nos. RJD-C-14-02285 and RJD-X-14-03013, indicate that Plaintiff is referring to
22  January 201<u>4</u>.  <u>See id.</u>; <u>see also</u> Sosa Decl., Exh. A at 9; <u>id.</u>, Exh. B at 17.  The Court will correct
    the error and use the date of January 15, 2014.
23

appealed and the second grievance was cancelled as moot due to Plaintiff's transfer to another prison.  Id.  Plaintiff alleges that the Eighth Amendment violation relating to his safety occurred on August 28, 2013 [Comp. at 5] and Defendant's evidence establishes that the relevant appeal was received on June 14, 2014 and cancelled for being untimely.  Sosa Decl. at 3; Exh. A.  A second, almost identical appeal, was received on August 19, 2014 and screened out for being duplicative and untimely.  Sosa Decl. at 3; Exh. B.

Plaintiff alleges that the Eighth Amendment violation relating his dental needs occurred between September 21, 2013 and January 15, 2014.  Comp. at 6.  The only grievance addressing medical issues identified by either party is Appeal Log No. RJD-C-14-02285.  Sosa Decl. at 3; Exh. A; MSJ Oppo. at 6.  In relevant part, this appeal alleges that RJD staff, including Defendants Heddy, Davis, Bustos, and Miller, "[d]enied [Plaintiff] showers, meds, shaves, writing material, and state issued envelopes," "threw away [his] blind canes and magnifiers," took away his money, and "gave [him] tiny portions of food."  Sosa Decl., Exh. A; MSJ Oppo. at 6.  The grievance does not allege a denial of dental supplies, and thus did not place prison officials on notice of Plaintiff's claim for deliberate indifference to his medical needs.  In addition, the appeal was cancelled because it was not timely as it was not received until June 14, 2014.  Sosa Decl. at 3; Exh. A.

The Court finds that the Defendants have satisfied their initial burden of establishing that Plaintiff did not submit timely grievances asserting any of the three claims at issue in this Complaint and did not exhaust the available administrative remedies.  The burden of production therefore shifts to Plaintiff and he must must "come forward with evidence showing" either that he properly exhausted all available administrative remedies before filing suit, or that "there is something particular in his case that made the existing and generally available administrative

35

1    remedies effectively unavailable to him." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir.

2    2015) (quoting Albino, 747 F.3d at 1172); Jones, 549 U.S. at 218.   Plaintiff presents two

3    arguments.   First, Plaintiff argues that he submitted a timely grievance on September 24, 2013.

4    Second, Plaintiff asserts that his mental health status and treatment prevented him from filing

5    timely grievances.

6            Plaintiff avers in his declaration that he handwrote an appeal and gave it to C/O Crawford

7    on September 24, 2013 to deposit in the appeals box and that C/O Crawford inspected the

8    envelope, accepted the grievance, and walked away with it.   Plaintiff Decl. at 2.   In his June 14,

9    2014 appeal, Plaintiff stated that the September 24, 2013 handwritten appeal was "similar" to

10   the June 14, 2014 appeal, RJD-C-14-02285.   Sosa Decl., Exh. A at 9.   Plaintiff explains that he

11   created a copy of the September 24, 2013 appeal but it was stolen from his personal belongings,

12   along with his impaired vision vest, blind cand, and glasses.   Plaintiff Decl. at 2-3.   Plaintiff thus

13   argues that he followed the prison's grievance procedure by submitting a timely grievance and

14   that prison officials prevented him from exhausting the claim.   MSJ Oppo. at 1-2.   Defendants

15   acknowledge that misconduct by prison officials resulting in an appeal not being processed may

16   render administrative remedies unavailable, but argue that such a finding is not appropriate in

17   this case because there is no evidence that the appeal was actually submitted and Plaintiff made

18   no effort to inquire as to the status of the submitted appeal.   MSJ Reply at 2-3.

19           In Williams, 775 F.3d at 1191-92, plaintiff stated in her verified complaint that she had

20   informed a prison officer about the facts alleged in her complaint, that the officer did not help

21   her, and that she subsequently attempted to file a grievance and an appeal with another prison

22   officer, who rejected the grievance and refused to file the appeal.   Id. at 1186, 1191-92. Plaintiff

23   also alleged in her opposition that "prison officials would not file or allow [her] to file a

36

grievance," cited the facts in her complaint, and claimed that she "'attempted' to exhaust her administrative remedies as to all the allegations alleged in the complaint and was hampered by prison officials." Id. at 1187.  The Ninth Circuit found that "[b]ecause there were genuine disputes of material fact and because Defendants did not carry their burden of demonstrating that [plaintiff] failed to exhaust *available* administrative remedies, summary judgment was inappropriate . . . ." Id. (emphasis in original).  The Ninth Circuit "treat[ed] [plaintiff]'s complaint as an affidavit because it was made under penalty of perjury," and found that the plaintiff's sworn statements in her complaint were sufficient to meet her burden of production to establish that administrative remedies were unavailable.  Id. at 1191-92; id. at 1192 n.11.

The Court finds that in this case, Plaintiff's sworn statements in his declaration and Complaint, accepted as true and viewed in the light most favorable to Plaintiff, are sufficient to create a genuine issue of material fact as to whether administrative remedies were effectively unavailable to him with regard to the allegations set forth in Appeal Log No. RJD-C-14-02285.  See id. at 1191-92; Bamdad v. Gavin, 2016 WL 1658657, at *5 (C.D. Cal. Feb. 5, 2016) (finding that plaintiff's sworn statement that he attempted to file grievances but was prevented from exhausting his administrative remedies was sufficient to defeat defendants' motion for summary judgment based on the failure to exhaust administrative remedies); see also Albino, 747 F.3d at 1177 (concluding that prison officials had not carried their burden of proving an available administrative remedy where grievance forms "had to be requested by an inmate and were never provided to [plaintiff], despite his repeated complaints").

Defendants' argument that Plaintiff's declaration should be disregarded or not believed because he fails to provide a copy of the missing grievance and because he did not inquire about the status of the missing grievance does not eliminate the disputed issue.  Rather, Defendants'

argument highlights the dispute—Plaintiff's declaration constitutes evidence that he filed a timely grievance and that prison officials made the administrative process unavailable to him for this grievance and Defendants' declarations constitute evidence that he did not do so.  This is clearly a disputed material fact and it is not the Court's province on a motion for summary judgment to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Defendants also imply that Plaintiff should not be believed because he was able to file other grievances and there is no reason to believe that prison officials would have prevented him from filing this particular grievance.  MSJ Reply at 3 ("It simply doesn't make sense that the prison would receive and process several other appeals during this time frame, but ignore one specific appeal.").  Plaintiff counters that Defendants retaliated against him for telling Lt. Rink about the assault and alleged officer misconduct and implies that the officers did not process the grievance regarding the assault to ensure that none of the involved officers would get in trouble.  Plaintiff Decl. at 1-3. Because there are genuine issues of material fact as to whether Plaintiff submitted a timely grievance raising the issues set forth in Appeal Log. No. RJD-C-14-02285 and whether prison officials prevented the grievance from being processed, summary judgment is inappropriate.

In support of his second argument, Plaintiff states in his sworn declaration that "for 9 1/2 months, [he] was mentally incapable of filing the appeal."  Plaintiff Decl. at 3.  Plaintiff explains that after he was sexually assaulted on August 28, 2013, he was taken to a hospital for a rape exam and then placed in a "suicide cell" at RJD.  Id. at 2.  Plaintiff states that he was moved to New Corcoran State Prison "for crisis bed housing" from September 1, 2013 through September

38

20, 2013, and that upon his return to RJD, he was not allowed writing supplies until September 24, 2013. Id. "From September 20, 2013," Plaintiff asserts that numerous prison staff, including Defendants, harassed, threatened, and retaliated against him, including stealing his belongings, which stressed him out. Id. Plaintiff states that "[he] was so stressed out, [he] went back to crisis bed" on January 15, 2014 in CHCF Stockton, and that on February 6, 2014, he was transferred to the Salinas Valley State Prison's Psychiatric Program. Id. at 2-3. Defendants did not submit evidence establishing that Plaintiff was mentally competent but merely argue that the fact that he filed other appeals during the relevant time frame negates his claim of mental incompetence. MSJ Reply at 3-4. Defendants also did not present any evidence establishing what, if any, administrative remedies and processes were available to Plaintiff at the various prisons and psychiatric facilities where he was housed, whether he was provided access to writing materials and the relevant prison forms at all times during his treatment at the various facilities, and/or the specific times he was housed in each of the facilities. See MSJ; MSJ Reply.

In Millner v. Biter, 2016 WL 110425, at *6 (E.D. Cal. Jan. 11, 2016), Plaintiff asserted in his verified declaration that he was unable to file a grievance due to his mental and physical condition and placement in a mental health crisis bed, suicide watch, and subsequent recovery, and argued that he was "not allowed any property, writing materials, or access to the CDCR grievance system." The court found that there was a genuine issue of material fact as to whether the administrative remedies were effectively unavailable to plaintiff, reasoning as follows:

> Defendants submit evidence that the administrative grievance process was available in general, but do not address specifically the extent of the availability of the administrative process during placement in a mental health crisis bed, suicide watch, and Plaintiff's subsequent recovery from such conditions . . . . The factual contentions raised by Plaintiff cannot be resolved by way of motion for summary judgment. The fact that Plaintiff may or may not have had the ability to previously file an inmate appeal . . . , when he was in a mental health crisis bed, is not

39

relevant nor dispositive of the issue of whether the circumstances at the relevant time in this case rendered the administrative remedy process unavailable. Thus, without examining all the facts and claims and weighing the evidence, the Court cannot resolve whether or not Plaintiff had a reasonable opportunity to utilize the administrative remedies during the relevant time frame or whether the administrative remedies were effectively unavailable to him.

Id. (citing Marella v. Terhune,[7] 568 F.3d 1024, 1027 (9th Cir. 2009) (remanding exhaustion issue to district court where record was unclear as to whether prisoner injured in a knife attack by another prisoner had access to the necessary grievance forms or the ability to timely file an appeal due to his stay in the hospital, prison infirmary, and subsequent administrative segregation); see also Urioste v. Burns, 2015 WL 3498528, at *6 (C.D. Cal. Apr. 17, 2015) (finding that administrative remedies are effectively unavailable when the inmate does not have access to necessary grievance forms, such as when the inmate has been hospitalized).

Similarly, in this case, Plaintiff's sworn statements are sufficient to create a genuine issue of material fact as to whether the administrative remedies were effectively unavailable to Plaintiff during the thirty days after his assault and the thirty days after the period of denial of dental supplies.   See Plaintiff's Decl. at 2-3; see also Williams, 775 F.3d at 1191-92.   Although

---

[7]   The Ninth Circuit relied on the following regulations, which it concluded "explicitly create an exception to the timely filing requirement":

[T]he appeals coordinator is only permitted to reject an appeal if "[t]ime limits for submitting the appeal are exceeded *and* the appellant had the opportunity to file within the prescribed time constraints."  Cal. Code Regs. tit. 15 §§ 3084.6(c) and 3084.3(c)(6) (emphasis added).  The California Department of Corrections and Rehabilitation Operating Manual directs the appeals coordinator to "ensure that the inmate or parolee had, in fact, the opportunity to file in a timely manner." Section 54100.8.1.

Id. at 1027.

40

Defendants argue that other appeals filed by Plaintiff between September 24, 2013 and June 2014, suggest that Plaintiff was mentally and physically capable of filing an appeal, Defendants do not establish "the extent of the availability of the administrative process during [Plaintiff's] placement in a mental health crisis bed, suicide watch, and Plaintiff's subsequent recovery." See Millner, 2016 WL 110425, at *6; Williams, 775 F.3d at 1192 (noting that defendants' argument that remedies were available to plaintiff as evidenced her unrelated appeals was "a virtual non-sequitur because it d[id] nothing to rebut [plaintiff]'s evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal *in this case*") (emphasis added).

The Court finds that in light of the facts set forth in Plaintiff's sworn declaration and verified Complaint, there is a genuine issue of material fact as to whether Plaintiff had meaningful access to the administrative remedy process during the relevant time periods at the relevant facilities. The Court concludes that Defendants' evidence is insufficient to carry their "ultimate burden of proof" with respect to all of the claims asserted in the Complaint and therefore **RECOMMENDS** that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies be **DENIED** as to all three claims.

## V.    CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting in part and denying in part Defendants' motion to dismiss Plaintiff's Complaint; and (3) denying Defendants' motion for summary judgment.

1      **IT IS HEREBY ORDERED** that any written objections to this Report must be filed with

2  the Court and served on all parties **no later than <u>July 11, 2016</u>**.  The document should be

3  captioned "Objections to Report and Recommendation."

4      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

5  and served on all parties **no later than <u>August 1, 2016</u>**.  The parties are advised that failure

6  to file objections within the specified time may waive the right to raise those objections on

7  appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

8  **VI.  <u>MOTION TO BE TRANSFERRED TO ANOTHER INSTITUTION</u> [ECF No. 34]**

9      On December 28, 2015, the Court accepted on discrepancy a document signed by Plaintiff

10  on December 16, 2015, titled "Injunction," in which Plaintiff asks the Court to move him to the

11  California Medical Facility in Vacaville.  ECF Nos. 33 & 34.  In support, Plaintiff alleges that he is

12  vision impaired and walks with a cane, and that his disability verification form CDCR 1845

13  mandates that he should not be housed on a prison yard with obstacles that "severely hinder[]

14  his program and/or movement."  ECF No. 34 at 1.  Plaintiff further contends that the D-yard of

15  the California State Prison, Los Angeles County, has steps, that on November 21, 2015, he

16  tripped and fell over a step, and that the yard is difficult to navigate with a cane because it

17  comprises of mostly dry mud.  <u>Id.</u>  Plaintiff also maintains that the facility to which he seeks to

18  be transferred is designed for vision impaired inmates, and that his transfer will prevent future

19  injuries.  <u>Id.</u>  In light of the relief requested by Plaintiff, the Court construes Plaintiff's motion as

20  a motion to be transferred to another institution.

21      The Court does not have jurisdiction to order Plaintiff to be transferred to another

22  institution.  <u>See</u> <u>Sharma v. Johnson</u>, 2014 WL 2769139, at *4 (E.D. Cal. June 18, 2014)

23  (construing portion of petitioner's civil rights complaint for a prison transfer as a habeas petition

1  brought under 28 U.S.C. § 2241 and denying the request for transfer where the "court lack[ed]

2  jurisdiction to order the petitioner's transfer to another prison [because] Title 18 U.S.C § 3621(b)

3  gives the BOP [Bureau of Prisons] authority to 'designate the place of the prisoner's

4  imprisonment' and the discretion to 'direct the transfer of a prisoner from one penal or

5  correctional facility to another.'").   "Title 18 U.S.C. § 3625 prohibits judicial review of 'any

6  determination, decision, or order' that the BOP makes under 18 U.S.C. § 3621." Id.; 18 U.S.C.

7  § 3625; see also Reeb v. Thomas, 636 F.3d 1224, 1227-29 (9th Cir. 2011) ("Although judicial

8  review remains available for allegations that BOP action is contrary to established federal law,

9  violates the United States Constitution, or exceeds its statutory authority," review of the BOP's

10  discretionary decisions regarding an individual inmate's place of incarceration falls outside

11  federal courts' subject matter jurisdiction).   In addition, it appears that Plaintiff already has been

12  moved to another facility.   See ECF No. 36 (containing Plaintiff's change of address notice).

13  Accordingly Plaintiff's motion for transfer to another institution is **DENIED**.

14        **IT IS SO ORDERED.**

15

16  Dated:  6/20/2016

17  Hon. Barbara L. Major
   United States Magistrate Judge

18

19

20

21

22

23

43